# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

THOMAS R. HUTCHINSON and )
CLAY ROBERTS, III, individually )
and as a former member of )
ROBERTS, MARRS and CARSON, )
                                                  )
      Plaintiffs, )
                                                  )
v. )          Case No. 05-CV-453-TCK-PJC
                                                  )
BONNIE J. HAHN, et al., )
                                                  )
      Defendants. )

## REPORT AND RECOMMENDATION

      This matter comes before the Court on referral from the District Court.  On July 7, 2006, following hearing on motions for sanctions[1] District Judge Terrence Kern granted the Defendants' Motions for Sanctions [ Dkt. ## 35 & 50] and denied the Plaintiffs' Motion for Sanctions [Dkt. # 55].  (*See* Transcript of Proceedings on July 7, 2006, pp. 59-65) [Dkt. # 81].  The Court's ruling was subsequently memorialized in an Opinion and Order filed September 4, 2007.  [Dkt. # 126].  In his Opinion and Order, Judge Kern set forth various sanctions imposed upon attorney Joan Godlove ("Godlove") and her client Thomas R. Hutchinson ("Hutchinson") pursuant to Fed.R.Civ.P. 11, 18 U.S.C. §1927 and the court's inherent authority to stop abusive litigation practices.  Judge Kern held

---

[1]      The following sanctions motions were heard: Motion of Defendants Marthanda Beckworth ("Beckworth") and Atkinson, Haskins, Nellis, Holeman, Brittingham, Gladd & Carwile (collectively, "Atkinson Haskins") for Sanctions Against Plaintiffs and Plaintiffs' Counsel [Dkt. # 35],  the Motion of Defendants David T. Kasper ("Kasper") and Locke Reynolds Boyd & Weisell (collectively, "Locke Reynolds") for Sanctions Against Plaintiffs and Plaintiffs' Counsel [Dkt. # 50], and Plaintiffs' Motion for Order Imposing Ultimate Sanction of Default Against Defendants on the Issue of Liability and Monetary Sanctions Against Defendants and Their Attorneys for Deliberate Scheme to Defraud the Court [Dkt. # 55].

that "Attorney Godlove and Plaintiff Hutchinson are jointly and severally liable for all costs and attorneys' fees" incurred by Defendants herein, "including the costs of pursuing Defendants' motions for sanctions."  Order and Opinion, Dkt. # 126 at p. 23.

On October 4, 2007, Judge Kern referred to the undersigned "the remaining issue regarding the amount of costs and fees to be awarded to Defendants Beckworth, Atkinson, Kasper and Locke Reynolds."  [Dkt. # 128].  Accordingly, I conducted an evidentiary hearing on December 6, 2007 ("the Dec. 6 hearing").  After reviewing the exhibits submitted herein and the affidavits for and against the sanction award, and hearing the testimony of witnesses Beckworth and Walter Haskins ("Haskins"), I make the following findings and Recommendations set forth below.

# I
## *Background of the Dispute*

In December 1993, in another case involving Hutchinson and Godlove, then-U.S. Magistrate Judge John Leo Wagner addressed issues nearly identical to those presented here.  *Hutchinson v. Pfeil*, Case No. 92-C-1088-E (Order for Sanctions, Certification of Record and Recommendation of U.S. Magistrate Judge, Dkt. # 75, Dec. 22, 1993).  Judge Wagner found that allegations of fraud on the court made by Godlove against defense counsel in that case were "spurious and unwarranted."  *Id.* at p. 9.   Judge Wagner further found that Godlove had been "fervid in her slanted representations to the court" and observed that the awarding of sanctions under Fed.R.Civ.P. 11, 28 U.S.C. § 1927 and the court's inherent authority might be appropriate.  *Id.*

Today, exactly 14 years after Judge Wagner's ruling, I find myself addressing essentially the same issues.  The allegations underlying this lawsuit have provided grist for the legal system for more than a quarter century.  The original lawsuit in this long

legal saga was brought by the Plaintiff Hutchinson's father in the U.S. District Court for

the Southern District of Indiana, claiming entitlement to certain paintings.  That case was

dismissed after the Court determined that plaintiffs' claims were barred by the doctrine of

laches.  Since then Plaintiffs[2], through their attorney Godlove, have filed more than 30

lawsuits in various courts, including this one, all of which derive from the same core

facts.  These lawsuits have been filed in three U.S. District Courts, and two state courts.

Appeals have been taken to three circuit courts of appeals and the U.S. Supreme Court.

The cases include:

> **Tenth Circuit Court of Appeals:**
> *Hutchinson v. Pfeil*, Nos. 99-5019 & 98-5245, 208 F.3d 1180 (10th Cir. 2000);
> *Hutchinson v. Pfeil*, No. 98-5248, 211 F.3d 1278 (Table) (10th Cir. 2000) (unpublished);
> *Hutchinson v. Pfeil*, No. 96-5031, 105 F.3d 562 (10th Cir. 1997), *cert. denied*, 522 U.S. 914 (1997);
> *Hutchinson v. Pfeil*, No. 95-5269, 105 F.3d 566 (10th Cir. 1997).
>
> **Seventh Circuit Court of Appeals:**
> *Hutchinson v. Spanierman*, No. 97-2752, 190 F.3d 815 (7th Cir. 1999);
>
> **Sixth Circuit Court of Appeals:**
> *Schwartz v. Cincinnati Museum Ass'n*, Case Nos. 00-3494, 00-3495 & 00-3496, 35 Fed.Appx. 128 (6th Cir. 2002);
>
> **Northern District of Oklahoma:**
> *Hutchinson v. Hahn*, No. 04-CV-341-E (N.D.OK. Jan. 24, 2006), *aff'd*, No. 06-5122 (10th Cir. Feb. 21, 2007);
> *Hutchinson v. Pfeil*, No. 02-C-721-E, (N.D.OK. Jan. 24, 2006); *aff'd*, 06-5121 (10th Cir. Feb. 21, 2007);
> *Hutchinson v. Pfeil*, No. 02-C-425-E (N.D.OK., Sept. 6, 2007), *aff'd*, No. 06-5055 (10th Cir. Feb. 21, 2007);
> *Hutchinson v. Pfeil*, No. 02-408-E (N.D.OK., Sept. 6, 2007), *aff'd*, No. 06-5053 (10th Cir. Feb. 21, 2007);
> *Hutchinson v. Pfeil*, No. 94-C-711-E;

---

[2]      Although the specific plaintiffs in each of these cases have changed over the years, there has always been a "Hutchinson" – whether the current plaintiff, his father or his sister – as a named party.

*Hutchinson v. Pfeil*, No. 94-C-1134-E;
*Hutchinson v. Pfeil*, No. 92-CV-1088-E.

**Southern District of Ohio:**
*Hutchinson v. Cincinnati Museum Ass'n*, No. 96-CV-826-SAS;
*Hutchinson v. Cincinnati Museum Ass'n*, No. 96-CV-827-SAS;
*Hutchinson v. Butler Inst. of Amer.*, No. 96-CV-233-SAS.

**Southern District of Indiana:**
*Hutchinson v. Day*, EV-80-104-C;
*Hutchinson v. Thompson*, EV-90-43-C;
*Hutchinson v. Spanierman*, EV-90-44-C.

**United States Supreme Court:**
Plaintiff has also filed multiple petitions with the United States Supreme
Court, including:
*In re Hutchinson*, 522 U.S. 912 (1997) (petition for writ of mandamus
denied);
*In re Hutchinson*, 516 U.S. 805 (1995) (petition for writ of mandamus
denied);
*Hutchinson v. Pfeil*, --U.S.--, 128 S.Ct. 108 (2007) (cert. denied);
*Hutchinson v. Pfeil*, 531 U.S. 959 (2000) (cert. denied);
*Hutchinson v. Pfeil*, 530 U.S. 1205 (2000) (cert. denied);
*Hutchinson v. Spanierman*, 529 U.S. 1068 (2000) (cert. denied);
*Hutchinson v. Pfeil*, 522 U.S. 914 (1997) (cert. denied).

**State Courts:**
State court actions. include:
*Hutchinson v. Carter*, 33 P.3d 958, 2001 OK CIV APP 124 (affirming
dismissal of negligent supervision claim);
*Hutchinson v. Horowitz*, 96 N.Y.2d 730, 745 N.E.2d 1018, 722 N.Y.S.2d
796 (Table) (Jan. 9, 2001) (motion for leave to appeal dismissed).

A more detailed history of Hutchinson's lawsuits is set forth in Judge Kern's

Opinion and Order.  (Opinion and Order, pp. 2-5, Dkt. # 126).  It is sufficient to note that

Plaintiffs have repeatedly asserted the same or similar claims against various Defendants,

and that those claims had been consistently rejected in every court in which they were

made.  In addition, the Sixth, Seventh and Tenth Circuit Courts of Appeals have all had

opportunities on appeal to examine the various theories posed in Plaintiffs' lawsuits and

have consistently rejected Plaintiffs' positions.  The U.S. Supreme Court has rejected

each of Plaintiffs' petitions.  Thus, neither Godlove nor her clients have ever succeeded in any of the many lawsuits and appeals they have filed.

Her conduct as a serial litigator has caused Godlove to be sanctioned by several courts.  *E.g. Hutchinson et al. v. Pfeil, et al.*, Tenth Circuit Court of Appeals Order and Judgment, No. 06-5033 and Order and Judgment No. 06-5053 slip ops. (affirming district court's grant of 12(b)(6) motion, finding that Plaintiffs' appeals were "frivolous" and sanctioning Plaintiffs and Godlove by holding them jointly and severally liable for double costs); *Hutchinson v. Pfeil*, 201 F.3d 448 (10th Cir. 1999), *cert. denied*, 530 U.S. 1205 (2000) (affirming sanctions for improper discovery conduct); *Hutchinson v. Pfeil*, Case Nos. 02-C-408-E and 02-C-425-E (N.D.Ok. Mar. 6, 2003) (declining to impose monetary sanctions but placing filing restrictions on Godlove, concluding Godlove "is an individual who simply refuses to accept the judgments of the courts." (*quoting Stafford v. U.S.*, 208 F.3d 1177, 1178 (10th Cir. 2000)); *Hutchinson v. Pfeil*, Case No. 92-C-1088-E (N.D. Ok. Dec. 22, 1993) (imposing sanction of $7,414.77 under Fed.R.Civ.P. 37(a)(4)), *aff'd*, No. 98-5043 (10th Cir. Jan. 18, 2000).[3]

The instant lawsuit arises from the same set of facts and the same litany of allegations that have characterized this litigation.  The Complaint herein totals 86 pages and 271 enumerated paragraphs.  It asserts two Civil RICO claims and claims for "Attorney Deceit" in Indiana and Oklahoma litigation.  Defendants Beckworth, Atkinson

---

[3]      An additional sanction of $5,000 was vacated by the Tenth Circuit Court of Appeals.  *Hutchinson v. Pfeil*, 208 F.3d 1180 (10th Cir. 2000). Godlove's sanctions problems have not been confined to the Hutchinson cases.  In *Godlove v. Bamberger*, 903 F.2d 1145, 1149 (7th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991), Godlove sued her former law firm for wrongful termination.  After repeated failure to comply with the trial court's discovery orders, the court dismissed her lawsuit with prejudice as a sanction because she "willfully and deliberately chose to ignore and refuse to obey the court's orders."

Haskins, Kasper, and Locke Reynolds (collectively, "the Defendants"), responded to this lawsuit by seeking sanctions against Plaintiff Hutchinson and Godlove for bad faith, vexatious litigation practices.

The conduct of Plaintiffs and their counsel ultimately resulted in this Court's sanctions order. The District Court found that Plaintiffs, through Godlove, have filed "more than thirty (30) lawsuits, including this one, in which they continue [to] assert the same legal theories and claims and, most importantly, continue to be defeated." (Opinion and Order, p. 14, Dkt. # 126]. The Court stated:

> The instant case incorporates the same allegations that Plaintiffs have
> unsuccessfully presented countless times in the past, and the Court will
> simply not tolerate such egregious behavior any longer.

*Id.*

Accordingly, the District Court entered sanctions against Godlove and Plaintiff Hutchinson pursuant to 28 U.S.C. § 1927, Fed.R.Civ.P. 11 and the Court's inherent authority. The full list of sanctions is set forth at pages 23-24 of the Opinion and Order [Dkt. # 126].

The specific issue referred to the undersigned was the amount of expenses and fees to be awarded to the Defendants. Defendants ask to be fully compensated for their attorney fees and expenses incurred herein. For Atkinson Haskins this amount totals $77,271.64. For Locke Reynolds, the total is $36,148.57.

## II
### *Legal Authority for Sanctions and Applicable Standards*

In order to deter frivolous and abusive litigation practices and promote justice and judicial efficiency, federal courts are empowered to impose monetary and other sanctions by statutes, rules of civil procedure and their inherent power to manage their proceedings.

*Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-67 (1980)).  Here, the Court imposed sanctions against plaintiff Hutchinson and attorney Godlove on three bases:  (1) 28 U.S.C. §1927, (2) Fed.R.Civ.P. 11, and (3) the Court's inherent authority.  I will discuss each of these briefly.

**1.      28 U.S.C. § 1927.**

Section 1927's sparse legislative history indicates that it was passed in 1813 in response to abuses caused when U.S. Attorneys who were paid on a piecework basis filed unnecessary lawsuits in order to increase their compensation.  *See Roadway Exp.,* 447 U.S. at 759 & n.6.  Consistent with its historical roots, the present version of the statute allows an award of attorney fees – but only against counsel, not the client – for "multipl[ying] "the proceedings in any case unreasonably and vexatiously."  *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985).  "Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care."  *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985).  Imposition of sanctions under section 1927 requires a "clear showing of bad faith."  *Dreiling*, 768 F.2d at 1165 & n. 16; *State of W. Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir. 1971), *cert.* denied, 404 U.S. 871 (1971)).  Bad faith is determined by an objective analysis, not a subjective good faith inquiry.  *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998).

Sanctions are appropriate when the attorney's conduct is completely without merit, requiring the conclusions that they must have been undertaken for an improper purpose such as delay.  *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986).  An attorney can become the target of § 1927 sanctions "by acting recklessly or with

indifference to the law, as well as by acting in the teeth of what he knows to be the law....

A lawyer's reckless indifference to the law may impose substantial costs on the adverse

party.  Nevertheless, courts are mindful that the power to assess costs against an attorney

under §1927 is a power that must be strictly construed and utilized only in instances

evidencing a "serious and studied disregard for the orderly process of justice." *Kiefel v.*

*Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968), *cert. denied*, 395 U.S.

908 (1969) (quoted in *Dreiling*, 768 F.2d at 1165).

2.      **Fed.R.Civ.P. 11.**[4]

        Fed.R.Civ.P. 11 requires that every pleading motion or paper of a represented

party must be signed by the attorney.  The rule further provides:

> **(b) Representations to Court.**  By presenting to the court a
> pleading, written motion, or other paper – whether by signing,
> filing, submitting, or later advocating it – an attorney or
> unrepresented party certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances --
>
> (1) it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of
> litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted
> by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery; and

---

[4]      Fed.R.Civ.P. 11 was amended effective December 1, 2007; however, the decision
to impose sanctions and Opinion and Order memorializing that decision were issued
under the pre-December 2007 version of the Rule.  The 2007 amendments were "stylistic
only."  Fed.R.Civ.P. 11  advisory committee note.

> (4) the denials of factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on belief or a
> lack of information.

Fed.R.Civ.P. 11(b).

Under the rule, a court may impose an "appropriate sanction on the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed.R.Civ.P. 11(c).  Thus, sanctions may be imposed on the attorney, the client, or both. *Oliveri*, 803 F.2d at 1274.  Rule 11 applies only to the initial signing of a "pleading, motion or other paper."  The focus of the rule is the certification that is created by the signature on the pleading. *Griffen v. City of Oklahoma City*, 3 F.3d 336, 338-39 (10th Cir. 1993) (citing *Oliveri*, *supra*).

Courts have emphasized the punitive, rather than compensatory, nature of sanctions under Rule 11. *Pavelic & Le Flore v. Marvel Entertainment Group*, 493 U.S. 120, 126 (1989) (purpose of the rule "is not reimbursement but 'sanction'.")  However, courts have also noted the objective of general and specific deterrence. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filing in district court….").  The appropriate method of deterrence may well include "the payment of expenses and attorneys' fees generated as a result of the filing of abusive litigation." *Brandt v. Schal Associates, Inc.*, 960 F.2d 640, 646 (7th Cir. 1992).

Still, any sanction must be carefully chosen and should be the least severe necessary. *White v. General Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990).

> A sanction imposed under this rule must be limited to what
> suffices to deter repetition of the conduct or comparable conduct
> by others similarly situated. Subject to the limitations in
> subparagraphs (A) and (B), the sanction may consist of, or include,

9

> directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11(c)(2).

Subparagraph (A) of the Rule provides that monetary sanctions may not be awarded against a represented party for a violation of Rule 11(b)(2). Sanctions should be limited to what is necessary to deter repetition of such conduct or similar conduct by others similarly situated. Georgene M. Vairo, Rule 11 Sanctions, p. 521 (3d ed. ABA). Fee-based sanctions should be imposed only for egregious Rule 11 violations and such an award must be limited to the amount directly related to the violation. *Id.*; *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1030 (7th Cir. 1999).

**3.     Inherent Authority.**

The right of access to the courts is neither absolute nor unconditional. *In re Green*, 669 F.2d 779, 785 (D.C.Cir. 1981). There is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious. *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989). Thus, federal courts have the inherent power to levy sanctions in response to "abusive litigation practices." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1153 (10th Cir. 2007). Courts also have "inherent power to impose sanctions that are necessary to regulate the docket, promote judicial efficiency, and … to deter frivolous filings." *Hutchinson v. Pfeil*, 223 Fed.Appx. 765, 768 (10th Cir. 2007). For example, a court may impose an award of reasonable attorney fees to the prevailing party when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co., Inc., v. United States ex rel. Industrial Lumber Co.,*

*Inc.*, 417 U.S. 116, 129 (1974).  Sanctions under inherent power authority may be imposed against the attorney or his/her client.  *Oliveri*, 803 F.2d at 1272 (citing *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (award against party) and *Weinberger v. Kendrick*, 698 F.2d 61, 80-81 (2d Cir. 1982) (award against attorney), *cert. denied*, 464 U.S. 818 (1983)).    Such sanctions may be imposed for commencing or continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Id.*at 1272.  Nonetheless, courts have interpreted this standard restrictively:

> To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both " 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts."

*Id.*  (citation omitted).

## 4.      Attorney Fees/Expenses as a Sanction

Under the cited authorities, sanctions  may be imposed to accomplish several primary objectives:  First, punishment for improper conduct.  Second, general and specific deterrence. Third, compensation for the costs incurred by the moving party. When imposing an award of fees as a sanction to compensate the moving party, courts have used the standard lodestar analysis to determine the reasonableness of the fee request.  *E.g.*, *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568-69 (5th Cir. 2006). However, since courts have discretion in imposing sanctions, a lesser amount than the lodestar calculation may be assessed.  *E.g.*, *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C.Cir. 1998).

In determining the appropriate sanction amount, a court should consider the following factors:  (1) reasonableness (lodestar) calculation; (2) minimum amount sufficient to deter misconduct; (3) offender's ability to pay.  *White*, 908 F.2d at 684-85.

The starting point for lodestar analysis is determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (awarding fees to prevailing Plaintiff under 42 U.S.C. § 1988).

### III
### *Evidence Presented on Amount of Sanctions*

The evidence submitted in support of Defendants' motions establishes hourly billing rates of $225.00 per hour for partners, $150.00 per hour for associates, and $65.00 per hour for paralegals.[5]  Counsel for Plaintiffs conceded at the evidentiary hearing on December 6, 2007, that the hourly rates were reasonable and that she could not contest them.

Atkinson Haskins' evidence established that it had expended 342.40 total hours defending this action for a total fee amount of $75,453.50.  In addition the firm incurred expenses of $1,863.14.  Atkinson Haskins seeks a total amount of $77,271.64.

Locke Reynolds claims 159.40 hours representing fees of $35,729.00 and expenses of $419.57.  Locke Reynolds seeks a total amount of $36,148.57.

At the Dec. 6 hearing, Defendants offered the testimony of Beckworth and Haskins as to the reasonableness of the hourly rates and hours expended.  The testimony

---

[5]     Although evidence presented at the Dec. 6 hearing established an hourly rate for associates of $150, a review of the submitted time records reflects no associate time was recorded.  Only two lawyers – Beckworth and Haskins – billed on this matter and both are partners who charged at the $225 rate.  The lone associate entry for .30 hour on Oct. 26, 2006 was an error and was deleted at the hearing.

established that the requested fees were for work that was reasonable and necessary for defense of the actions.  Beckworth explained that the requested fees for Locke Reynolds are far less than those requested by Atkinson Haskins because Plaintiffs had sued Locke Reynolds in a similar lawsuit in 2004 and work done in defense of that action was used for defense in the instant action.  Atkinson Haskins was not a defendant in the 2004 case; furthermore, there were aspects of the allegations against Atkinson Haskins that were unique to that Defendant.

Plaintiffs conceded the reasonableness of the hourly rates and did little to challenge the hours expended.  For example, under Rule 11 the Court may consider the ability of the party against whom sanctions are being sought to pay the amount being considered.  *White*, 908 F.2d at 685.  However, Godlove offered no evidence that either she or Hutchinson would be unable to pay the full amount requested by Defendants. Godlove sought to challenge Defendants' fee requests only on the ground that such fees had been incurred attempting to defraud the court and, thus, should not be reimbursed. The Court rejected her approach for several reasons:  First, Godlove's effort sought yet again to resurrect the attorney deceit claim that she has asserted numerous times before and which has been has been consistently rejected as a matter of law.  Indeed, her assertion of this claim is a primary reason for the sanction award against her in this case. *See*, Opinion and Order, Dkt. # 126, p. 14 ("The instant case incorporates the same allegations that Plaintiffs have unsuccessfully presented countless times in the past, and the Court will simply not tolerate such egregious behavior any longer.").  Second, even if Godlove could contest Defendant's fee request on this basis she failed to challenge any specific time entries in the records submitted by Defendants.  To be blunt: Hutchinson

and Godlove offered absolutely no rational assistance to the Court in conducting the

lodestar analysis or otherwise determining the proper sanction amount.  Finally, Godlove

failed to offer any competent evidence at the Dec. 6 hearing.  Indeed, Godlove's

performance showed complete lack of preparation and little apparent familiarity with the

Federal Rules of Evidence.  She sought to introduce evidence without proper evidentiary

foundation and her questioning of witness Beckworth was not focused, not probative and

not helpful to the Court.  Hutchinson and Godlove offered no assistance to the Court in

addressing the sanctions considerations identified by the Tenth Circuit in *White*, 908 F.2d

675.  They offered nothing to contest the amount requested by Defendants, proffered

nothing in mitigation and lent no assistance to the Court in determining an appropriate

sanction amount.

**IV**
*Discussion*

Defendants have submitted fee requests of $36,148.57 for Locke Reynolds and

$77,271.64 for Atkinson Haskins.  This is the second time that Davis Kasper and Locke

Reynolds have been sued by Hutchinson and Godlove.  Kasper and Locke Reynolds were

defendants in *Hutchinson v. Hahn*, Case No. 04-CV-341 (N.D.Ok.).  There, Hutchinson

and Godlove asserted much the same claims as they have asserted herein:  civil RICO

and attorney deceit for the lawyers' conduct opposing Hutcinson and Godlove in their

lawsuits in the Southern District of Indiana and the U.S. Court of Appeals for the Seventh

Circuit.  Before a Judgment was entered in favor of Kasper and Locke Reynolds in the

04-341 case, Hutchinson and Godlove reasserted the claims in this action.  Thus, Kasper

and Locke Reynolds have twice been forced to bear the cost of defending the same

spurious claims,

Beckworth and Atkinson Haskins are first-time targets of Hutchinson and Godlove.  However, this lawsuit follows a familiar pattern of misconduct.  After Hutchinson and Godlove have lost a case they have frequently sued opposing counsel in retribution.  For example, Tulsa attorney Lewis Carter, who defended Richard and Mary Jo Pfeil in at least five lawsuits filed by Hutchinson and Godlove in this Court – Case Nos. 92-1088, 94-711, 94-1134, 02-408 and 02-721 – was named as a defendant in three cases:  02-408, 02-425 and 02-721.  Similarly, Beckworth, opposing counsel in prior actions brought by Hutchinson and Godlove, has in turn become a defendant along with her law firm in this case.  While Beckworth and Atkinson Haskins have borne defense costs only one time, that fact does not lessen the egregious nature of Hutchinson's and Godlove's legal mischief.

Although the Plaintiffs have made no substantive challenge to Defendants' requested sanction amounts, the Court is obligated to assure itself that the requested sanction amounts are reasonable and warranted under the circumstances presented here.

The District Court found that Godlove, as Hutchinson's attorney and with his knowledge, has engaged for many years in a course of misconduct.  She has asserted "new claims" that were "based on previous, rejected claims."  (Opinion and Order, Dkt. # 126, p. 15).  She has engaged in frivolous litigation, seeking to resurrect claims that have been repeatedly dismissed by simply adding new defendants to her latest lawsuit.  *Id.*  The District Court also found that Godlove had initiated her lawsuits for the purpose of oppression and harassment to needlessly increase the cost of litigation.  *Id.* at 16.  The District Court found, based on Hutchinson's own testimony, that Hutchinson was aware of Godlove's behavior and continued to pursue claims that were legally and factually

baseless, lacked evidentiary support and had already been rejected by the courts. *Id.* at 20.

For Rule 11(b)(1) purposes, Hutchinson's and Godlove's sanctionable conduct began with the filing of this lawsuit. They knew from the outset that the claims asserted herein had been previously rejected and/or lacked evidentiary basis. The District Court found that they continued to assert these claims for improper purposes – harassment, or to cause unnecessary delay or needless increase in the cost of litigation. This violation continued as Hutchinson and Godlove continued to press this action in the face of Defendants' motion to dismiss and motions for sanctions. When Hutchinson and Godlove received an adverse ruling from Judge Kern in July 2006, their response was to seek the judge's recusal, again unnecessarily increasing Defendants' costs and expenses. All of the costs incurred by Defendants flow directly from the actions of Hutchinson and Godlove in filing this lawsuit, asserting – yet again – the claims that have been rejected so often before. But for the misconduct visited upon the Defendants, they would not have incurred the legal fees and expenses at issue. Thus, Hutchinson and Godlove may appropriately be ordered to reimburse the Defendants for all reasonable fees and expenses they suffered as a result of this misconduct. This sanction is properly imposed jointly and severally.

Furthermore, Godlove violated Rule 11(b)(2) by asserting claims she knew were not warranted by existing law or by a "nonfrivolous argument for the extension, modification, or reversal of existing law or establishment of new law." Fed.R.Civ.P. 11(b)(2). However, monetary sanctions cannot be imposed on Hutchinson for this violation. Fed.R.Civ.P. 11(c)(2)(A). The District Court also found Godlove liable for

sanctions under 28 U.S.C. § 1927.  Such sanctions may be imposed on an attorney only and are warranted where, as here, the attorney has multiplied the proceedings in a case "unreasonably and vexatiously."  *Dreiling*, 768 F.2d at 1165.  Thus, Hutchinson cannot be held liable for sanctions under this statute.

Under the Court's inherent authority to stop abusive litigation practices, sanctions may be imposed on an attorney and client.  Thus, Hutchinson and Godlove may be held liable for sanctions under this theory.

The distinction between these various sanction provisions is of little consequence under the unusual circumstances presented here because the appropriate measure of monetary sanctions under any of these authorities is full compensation of reasonable fees and expenses and because under either Fed.R.Civ.P. 11(b)(1) or the exercise of the Court's inherent authority, Hutchinson can be ordered to bear the cost jointly and severally with his attorney.

A court must always be concerned that in awarding sanctions against an attorney or client it not chill one's willingness to bring valid legal claims.  Any concern in this regard has been easily assuaged by the peculiar facts and circumstances presented by Godlove's reprehensible conduct on behalf of Hutchinson over the past 25 years. Appropriate sanctions here will not chill claimants from asserting legitimate claims hereafter.

After extensively reviewing the time records submitted and conducting the lodestar calculation, I conclude that, with slight reduction, the requested fees and expenses are reasonable and were necessarily and directly incurred in defense of a thoroughly improper action.  The hourly rates charged by counsel are in line with

prevailing rates in this market for attorneys with the years of experience of Beckworth and Haskins. After reviewing the time records for Atkinson Haskins, I recommend reducing reduced the fees by $3,176.50. This represents a reduction for billing a partner at $225 per hour to perform tasks that a paralegal appears to have been able to do. *E.g.*, 6.4 hours for exhibit preparation by Beckworth: reduced to $65 per hour.[6] Atkinson Haskins billed for two attorneys at depositions on March 28, 2006. Beckworth's 3.1 hours have been deleted. I have also reduced fees for research conducted by Beckworth that an associate could have performed at $150 per hour.[7] These adjustments reduce the Atkinson Haskins fees to $72,277. In addition I recommend a reduction in allowed expenses of 50 percent because Defendants did not provide sufficient information to evaluate copying rates, the need for fax or hand delivery instead of mail.

With respect to the Locke Reynolds fee request, I recommend adjustments for legal research that could have been performed by an associate at $150 per hour (reduction of $2,340).[8] Also, I recommend a reduction of $224 for time spent preparing exhibits. Defendant offers no explanation why this could not be done by a paralegal billing at $65, instead of a partner billing at $225 per hour.[9]

Under *White*, I must consider the minimum amount necessary to deter the conduct described herein. This Court has endeavored on numerous occasions to deter the misconduct of Hutchinson and Godlove through modest monetary sanctions. The Tenth Circuit Court of Appeals has recently followed suit, imposing double costs for frivolous

---

[6]     *E.g.*, time records for 12/12/2005, 3/23/2006, 6/21/2006, and 10/1/2007.
[7]     *E.g.*, time records for 11/22/2005, 11/28/2005, 12/6/2005, 12/16/2005, 2/1/2006, 6/16/2006, 6/21/2006, 8/14/2006, 8/15/2006, 8/16/2006.
[8]     *E.g.* time records for 11/28/2005, 12/2/2005, 12/8/2005, 1/5/2006, 1/9/2006 1/20/2006, 1/26/2006, 3/17/2006, 3/27/2006, 7/10/2006 7/12/2006, 7/15/2006.
[9]     *E.g.*, time records for 1/10/2006 and 10/2/2007.

appeals.  *See Order* in *Hutchinson v. Pfeil*, Nos. 06-5053, 06-5055, 06-5121, 06-5122,

(10th Cir. March 22, 2007) (imposing double costs on Plaintiffs and counsel for appeals

the Court found were frivolous and without merit).  Repeated attempts to deter

Hutchinson and Godlove have failed; consequently, various defendants and their counsel,

as well as the courts, have been subjected to abuse for more than a quarter century.  In

light of the unusual circumstances presented here, I can only conclude that modest

sanctions have failed to deter the misconduct at issue.  It is my conclusion from

reviewing the history of this litigation and witnessing Godlove's courtroom performance

that she and Hutchinson will not be deterred from this misconduct unless they are made

to shoulder full responsibility for that misconduct.  Furthermore, it is time that the Court

consider an amount that will reasonably compensate the victims of the offenders'

harassment.

Finally, *White* directs that the Court consider the offender's ability to pay.  The

burden was on Hutchinson and Godlove to proffer evidence on this issue.

> Inability to pay what the court would otherwise regard as an appropriate
> sanction should be treated as reasonably akin to an affirmative defense,
> with the burden upon the parties being sanctioned to come forward with
> evidence of their financial status.

*White*, 908 F.2d at 685.

As I have noted above, Hutchinson and Godlove offered no competent evidence

at the Dec. 6 hearing.  Specifically, they presented no evidence of their financial status or

inability to pay the sanctions requested by Defendants.

Pursuant to *White*, in determining a sanction amount a court may consider other

factors such as "the offending party's history, experience and ability, the severity of the

violation, the degree to which malice or bad faith contributed to the violation, the risk of

chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *Id.* I have weighed these considerations as well and find that they also favor a substantial monetary sanction.

Accordingly, I conclude that under the peculiar circumstances of this case – specifically, the long history of abuse demonstrated in this record, the abject failure of modest sanctions to deter the offenders' conduct, and the lack of any evidence in mitigation – that Hutchinson and Godlove should be ordered to repay the full amount of Defendant's reasonable expenses and fees.

## RECOMMENDATION

Based on the foregoing, I **RECOMMEND** a sanction award against Hutchinson and Godlove, jointly and severally, in favor of Beckworth and Atkinson Haskins of $72,277 in fees and $931.57 in expenses for a **total award of $73,208.57**.

I further **RECOMMEND** a sanction award against Hutchinson and Godlove, jointly and severally, in favor of Kasper and Locke Reynolds of $33,165 in fees and $419.57 in expenses for a **total award of $33,808.57.**

## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed. R.Civ.P. 72(b). The failure to file

written objections to this Report and Recommendation may bar the party failing to object

from appealing any of the factual or legal findings in this Report and Recommendation

that are accepted or adopted by the District Court.  *See Moore v. United States*, 950 F.2d

656 (10th Cir. 1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

DATED this 21st day of December 2007.

Paul J. Cleary
United States Magistrate Judge